IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-00218-PAB

FELIPE ALANIZ HERRERA,

    Applicant,

v.

ERIC HOLDER, Attorney General,
JOHN SANDWEG, Director of the United States Immigration and Customs
    Enforcement,
JEH JOHNSON, Secretary of the Department of Homeland Security,
JEFFREY D. LYNCH, Acting Field Office Director, Denver, U.S. Immigration and
    Customs Enforcement,
THOMAS HOMAN, Executive Associate Director, Enforcement and Removal
    Operations, U.S. Immigration and Customs Enforcement,

    Respondents.

---

**ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS**

---

The matter before the Court is an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 1], filed by Applicant Felipe Alaniz Herrera through counsel.  The Government filed a Response to Order to Show Cause [Docket No. 11], and Applicant filed a Reply [Docket No. 15].  Applicant thereafter filed a Supplemental Reply Brief [Docket No. 17], to which Respondents filed a Response [Docket No. 18].  Having considered the same, the Court finds and concludes that the Application should be denied as moot.

**I. BACKGROUND**

Applicant was born in Mexico on February 5, 1970.  Docket No. 1-1, at 10.  He entered the United States in the early to mid-1990s.  Docket No. 1-2, at 1.  Applicant

was removed from the United States in June 2004. Docket No. 1, at ¶ 6. He re-entered the United States in 2009 without inspection. *Id.* at ¶7. Applicant was taken into custody by Immigration and Customs Enforcement ("ICE") on November 19, 2012, and his prior order of removal was reinstated. *Id.* at ¶ 8; Docket No. 1-3.

On or about January 30, 2013, the Houston Asylum Office found that Applicant failed to establish a reasonable fear of persecution or torture. Docket No. 1, at ¶ 9. The asylum claim was referred to an Immigration Judge. *Id.* at ¶ 10. On May 17, 2013, the Immigration Judge affirmed the Asylum Office's finding and ordered Applicant removed. *Id.*

On or about May 16, 2013, Applicant filed a Form I-918, Petition for U Nonimmigrant Status ("U Visa Application") with the United States Citizenship and Immigration Service ("USCIS") as he was a victim of a qualifying crime. Docket No. 1, at ¶ 11; No. 1-1, at 10-33. On May 22, 2013, USCIS issued a prima facie determination that Applicant was eligible for U-Visa relief. Docket No. 1, at ¶ 12; Docket No. 1-6.

Applicant requested a stay of removal pending the outcome of his U Visa Application. Docket No. 1, at ¶ 13; No. 1-1, at 1-2. ICE denied the request on June 3, 2013 because of Applicant's criminal history, which, due to a clerical error at the Boulder County Court, included an aggravated felony. Docket No. 1, at ¶ 14; No. 1-3. Applicant submitted a second request for stay of removal on July 23, 2013 based on the corrected state court criminal documents showing that he was not convicted of an aggravated felony, but for a lesser offense. Docket No. 1, at ¶¶ 13, 15; No 1-5. On August 13, 2013, ICE approved Applicant's request for a stay of removal, but continued his detention. Docket No. 1, at ¶ 16; No. 1-6.

On August 22, 2013, Applicant submitted a request for Review of Custody Decision based on his prima facie eligibility for a U Visa. Docket No. 1, at ¶ 13; No. 1-7. Applicant initiated this action on January 27, 2014. He asserts in the § 2241 Application that he is entitled to immediate release on the basis that prolonged post-removal-order detention is not authorized by the immigration statutes and implicates his procedural due process rights, as recognized in *Zadvydas v. Davis*, 533 U.S. 678 (2001).[1] Docket No. 1, at 5. For relief, Applicant asks the Court to order his immediate release from custody. *Id.* at 6.

On March 6, 2014, ICE notified Applicant that he would be released from ICE custody pending his removal from the United States "subject to certain written conditions that will be provided to you shortly on the Order of Supervision and Addendum to the Order of Supervision forms, and by which you must abide." Docket No. 11-1. Applicant was released on or about March 7, 2014 (Docket No. 15, at 2), subject to an Order of Supervision issued by ICE on March 28, 2014, and the Addendum thereto issued on April 16, 2014 (collectively referred to as "OSUP").

---

[1] *Zadvydas* addressed the potential constitutional concerns of an alien's indefinite detention under 8 U.S.C. § 1231(a). In that case, the aliens had been ordered removed and were being detained beyond the 90-day removal period pursuant to the Attorney General's authority under § 1231(a)(6). *Zadvydas*, 533 U.S. at 684-86. However, the government could not secure their removal because the designated countries either refused to accept them or did not maintain repatriation agreements with the United States. *Id*. Recognizing that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem," *id*. at 690, the Court ruled that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized," *id*. at 699. The Court further held that detention lasting six months or less is presumptively reasonable; detention lasting beyond six months requires the government to rebut the alien's showing that there is no significant likelihood of removal in the reasonably foreseeable future. *Id*. at 701.

Docket No. 17-1.  The OSUP contains 12 conditions and a monthly reporting requirement.  *Id.*

## II.  STANDARD OF REVIEW

An application for habeas corpus pursuant to 28 U.S.C. § 2241 may only be granted if the Applicant "is in custody in violation of the Constitution, or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); *see also* 28 U.S.C. §2241(c)(1) (stating that "[t]he writ of habeas corpus shall not extend to a prisoner unless [he] is in custody.").  Federal courts have habeas jurisdiction to examine the statutory and constitutional bases for an immigration detention unrelated to a final order of removal.  *Demore v. Kim*, 538 U.S. 510, 517-18 (2003).

## III.  LEGAL ANALYSIS

### A.  Mootness

Respondents urge the Court to dismiss the § 2241 Application as moot because Applicant has been released from ICE custody.  Docket No. 11, at 2; No. 18.

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction."  *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir.1996); *see also Alvarez v. Smith*, 558 U.S. 87, 130 S.Ct. 576, 580 (2009).  "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."  *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990).  At all stages of the case, the parties must have a "personal stake in the outcome" of the lawsuit.  *Spencer v. Kenma*, 523 U.S. 1, 7

(1998) (quoting *Lewis*, 494 U.S. at 477-78).  Federal courts have no authority to give an opinion upon a question that is moot as a result of events that occur during the pendency of the action.  *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992).

Where a habeas petitioner has been released from custody, the petition must be dismissed as moot unless one of the following exceptions to the mootness doctrine applies:  "(1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit."  *See Riley v. INS*, 310 F.3d 1253, 1256-57 (10th Cir. 2002).

Applicant argues in his Reply Brief that the Application is not moot because he remains in "constructive detention" pursuant to the terms of the OSUP.  This argument is foreclosed by *Riley* which held that the alien-petitioner's release from detention under an order of supervision mooted his challenge to the legality of his extended detention. *See Riley*, 310 F.3d at 1255, 1257.

Applicant further contends that the Application is not moot for the following reasons: (1) the threat remains that he will be removed from the United States if he fails to comply with the OSUP's reporting requirements (Docket No. 15, at 4-5); (2) the challenged action is capable of repetition, yet evading review, because he may be subject to detention again if he violates the terms of his OSUP (*id.* at 5-6); and (3), although Respondents voluntarily released him from prolonged post-removal-period

detention, they are free to detain him at any time if he violates the terms of his supervised release. *Id*. at 6.

The Court finds that none of the exceptions to the mootness doctrine recognized in *Riley* apply. Exception (1) is not implicated because Applicant fails to demonstrate a collateral injury resulting from his former detention that does not stem from the order of removal. *See Ferry v. Gonzales*, 457 F.3d 1117, 1132 (10th Cir. 2006).

Exception (2) does not apply because Applicant's concern that he might violate the terms of the OSUP and be detained again for a prolonged period, and ultimately removed from the United States, is based on speculation and therefore fails to satisfy the requirements of Article III. *See McAlpine v. Thompson*, 187 F.3d 1213, 1218 (10th Cir. 1999) (noting that speculation that a defendant will "break the law or otherwise violate the conditions of their release . . . would undermine our presumption of innocence . . . and the rehabilitative focus of the parole system"). The possibility of recurrence must be more than theoretical to keep an otherwise moot action alive. *See Murphy v. Hunt*, 455 U.S. 478, 482-83 (1982); *see also Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (A "threatened injury must be 'certainly impending' to constitute injury in fact.") (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). Further, if the immigration authorities detain Applicant at some future date, there is no reason to believe that the detention will be so short in duration as to deny Applicant the ability to litigate his claim at that time. *See Suarez–Tejeda v. United States*, No. 02-6341, 85 F. App'x 711, 716 (10th Cir. 2004) (unpublished).

Further, the "voluntary cessation" doctrine provides Applicant no recourse because there is no indication that the Respondents have released Applicant with the intention of later revoking that release, simply to evade review. *See Patrick v. Gonzales*, No. 07-cv-00470-MSK-MJW, 2008 WL496288, at *1 (D. Colo. Feb. 19, 2008) (citing *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n. 1 (2001)).

Applicant maintains in his Supplemental Reply Brief that he is subject to supervised release conditions that "provide no meaningful restriction on the Respondents' ability to amend the proposed reporting requirement." Docket No. 17, at 2. He concedes that the reporting requirements in the OSUP are reasonable, but "remains skeptical of the Respondents' assurances that once-monthly reporting requirement will remain as the only continuing restriction on [his] liberty." *Id.* Applicant asks the Court to exercise continuing oversight to ensure that Respondents adhere to the terms of the OSUP and do not modify the reporting requirement or impose more onerous burdens on him. *Id.*

An alien's release from post-removal detention "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Zadvydas*, 533 U.S. at 679-700; *see also id.* at 695 ("[W]e nowhere deny the right of Congress . . . to subject [aliens] to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions"); 8 U.S.C. § 1231(a)(3), (6) (aliens who are not detained beyond the 90-day removal period may be released subject to terms of supervision).

At this time, Applicant has not provided the Court with concrete facts to suggest that Respondents will impose additional restrictions on his liberty, or that such conditions would violate federal law.  The OSUP does not state that the conditions of Applicant's release are subject to modification.  Further, Applicant does not allege that ICE has threatened to change the terms of the OSUP and does not state specific facts demonstrating that ICE has a pattern, practice or policy of unilaterally revising the terms of an OSUP.  Purely speculative harm is insufficient to support an award of injunctive relief.  *See RoDa Drilling Co. v. Siegal,* 552 F.3d 1203, 1210 (10th Cir. 2009) (internal citation omitted).

The Court finds that Applicant's release from detention pursuant to an order of supervision moots his § 2241 Application.  The Court is not able to provide Applicant any meaningful relief at this time.  If Applicant's supervised release is revoked and he is once again detained pending removal or the granting of a U Visa, he may challenge the detention in a new § 2241 Application.

### B.  Request for Fees

Applicant requests that the Court award him attorney fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A).  Docket No. 1, at 6.  The statute dictates an award of fees to a "prevailing party other than the United States . . . unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

Applicant is not a prevailing party in this action.  In *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532 U.S. 598

(2001), the Court held that a "prevailing party" for purposes of a fee award under the Fair Housing Amendments Act and the Americans with Disabilities Act does not "include[ ] a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." 532 U.S. at 600; *see also id.* at 605 (a party is not a prevailing party if its lawsuit does not result in a "judicially sanctioned change in the legal relationship of the parties."). The Tenth Circuit has determined that "*Buckhannon's* interpretation of the term 'prevailing party' applies to that term as used in 28 U.S.C. § 2412(d)(1)(A)." *Iqbal v. Holder*, 693 F. 3d 1189, 1194, 1195 (10th Cir. 2012) (concluding that habeas petitioner whose petition was remanded to the agency, rather than being dismissed as moot, after USCIS issued a denial of the petitioner's naturalization application, did not confer prevailing party status on the petitioner for purposes of fee award under the EAJA). Accordingly, the Court finds that Applicant is not entitled to an award of fees.

## IV.  CONCLUSION

For the reasons discussed above, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Docket No. 1], filed by Applicant Felipe Alaniz-Herrera on January 27, 2014, is denied as moot and this action is dismissed without prejudice.  It is further

**ORDERED** that leave to proceed *in forma pauperis* on appeal is denied.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  If Mr. Herrera files a notice of appeal, he must also pay the full $505 appellate filing fee or file

a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days in accordance with Fed. R. App. P. 24.  It is further

**ORDERED** that each party shall pay his own attorney fees.


DATED July 23, 2014.

                                       BY THE COURT:

                                       s/Philip A. Brimmer
                                       PHILIP A. BRIMMER
                                       United States District Judge